UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X   Case No.:  18-cv-7091
JASON SINGH,

                          Plaintiff,

       -against-

DETECTIVE BRIAN PETTIT, individually,
DETECTIVE ANDREW SMITH, individually,
OFFICERS "JOHN DOE" 1-2 (fictitiously named)
ASSISTANT DISTRICT ATTORNEY
MARGOT GENDREAU and DISTRICT
ATTORNEY'S OFFICE INVESTIGATORS
"JOHN DOE" 1-2 (fictitiously named),

                         Defendants.
---------------------------------------------------------X

**COMPLAINT**

**JURY TRIAL DEMANDED**

       Plaintiff, JASON SINGH, by his attorneys, HARFENIST KRAUT & PERLSTEIN, LLP, as and for a complaint, allege as follows:

### NATURE OF THE ACTION

1.    This is an action seeking recovery for deprivation of Plaintiff Jason Singh's civil rights guaranteed to him under the Fourth and Fourteenth Amendments to the United States Constitution committed by the above named municipal defendants.

2.    The Plaintiff bases this action upon his illegal seizure by various members of the New York City Police Department on March 21, 2018, the investigation by various members of the New York County District Attorney's Office which culminated with the arrest on March 21, 2018 and the subsequent

malicious prosecution by various members of the New York City Police Department which terminated with the dismissal of all charges on motion of the New York County District Attorney's Office on October 17, 2018.

## JURISDICTION

3. Jurisdiction is proper in this Court pursuant to 28 USC §1331 and 42 USC §1983 in that the actions taken by the municipal defendants violated the Plaintiff's civil rights.

## VENUE

4. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) since the Plaintiff was seized at his home in Queens County which is located in the Eastern District of New York.

## PARTIES

5. Plaintiff, Jason Singh ("Jason") is a resident of the State of New York, residing at 116-53 148th Street, Queens, New York.

6. Detective Brian Pettit ("Pettit") who is being sued in his individual capacity, is a Police Office employed by the New York City Police Department. Upon information and belief, at all relevant times described herein, Pettit was acting under color of state law within the scope of his employment with the New York City Police Department.

7. Detective Andrew Smith ("Smith") who is being sued in his individual capacity, is a Police Office employed by the New York City Police Department. Upon information and belief, at all relevant times described herein, Smith was acting under color of state law within the scope of his employment with the New York City Police Department.

8. New York City Police Officers John Doe 1-2, are police officers who are being sued in their individual capacities and are employed by the New York City Police Department. Upon information and belief, at all relevant times described herein, the police officers were acting under color of state law within the scope of their employment as police officers employed by the City of New York.

9. Assistant District Attorney Margot Gendreau ("Gendreau") who is being sued in her individual capacity, is an Assistant District Attorney employed by the New York County District Attorney's Office. Upon information and belief, at all relevant times described herein, Gendreau was acting under color of state law within the scope of her employment with the New York County District Attorney's Office.

10. District Attorney's Office Investigators John Doe 1-2, are employees of the New York County District Attorney's Office who are being sued in their individual capacities. Upon information and belief, at all relevant times described herein, the District Attorney's Office Investigators were acting under color of state

law within the scope of their employment with the New York County District Attorney's Office.

## STATEMENT OF FACTS

11. On March 21, 2018, Jason was a seventeen-year-old high school student who resided with his mother and brother in Queens.

12. At approximately 6:00 AM on March 21, 2018, Jason's family was awoken by the sound of people claiming to be New York City police officers banging on their front door.

13. Jason's mother called 911 and confirmed that the individuals who were knocking on the door were in fact plain clothed New York City police officers.

14. Jason's mother then asked the men at her door what they wanted, and she was told that they needed Jason and his cell phone.

15. After being advised by his mother that the police needed to speak with him, Jason spoke with Pettit and Smith who told him that he was being arrested for Grand Larceny in the Fourth Degree.

16. At this time Jason was not advised of what he was accused of stealing and was just told to get into the unmarked police car outside his home.

17. Jason had never been arrested before and had no prior interactions with the New York City Police Department.

18. Jason complied with Pettit and Smith's request and was placed in the back of the unmarked police car.

19. Thereafter, Jason was transported by Pettit and Smith to a police station in Manhattan.

20. Upon arrival at the police station, Pettit, Smith and/or Police Officer John Doe 1 and 2 handcuffed Jason and brought him into the police station and he was placed in a holding cell for approximately two hours.

21. Thereafter, Jason was removed from the holding cell and again placed in handcuffs, before being brought to an interview room.

22. Once in the interview room, Jason was confronted by Pettit, Smith and Police Officer John Doe 1 and 2 who told Jason told that they "had video of you picking up computer parts in the lobby."

23. Jason asked for details of this alleged transaction but was not given any information by the officers.

24. Thereafter Jason was taken to a booking area and then was placed in a holding cell where he remained until 9:30 PM on March 21, 2018.

25. At approximately 9:30 PM, Jason was again handcuffed and removed from the holding cell.

26. Jason was then taken to meet Gendreau who told him "we have evidence against you."

27. Jason was not told what the evidence was and despite being in custody for more than fifteen hours had no idea what crime he was accused of committing.

28. Gendreau then asked Jason for the password for his iPhone.

29. Jason complied with Gendreau's request and gave her the password to allow access to his iPhone.

30. Thereafter, Jason was again taken back to a holding cell where he remained overnight.

31. At approximately 5:15 AM on March 22, 2018, Jason was brought up from the holding cell to a waiting area and was allowed to call his mother for the first time since he was arrested nearly twenty-four hours earlier.

32. While sitting in the waiting area, Jason was advised for the first time that he was being accused of stealing computer parts.

33. Jason was told that a person (whose identity is still unknown to him) had accused him of using a Venmo account to pay for the computer parts and that the charge had later been disputed as fraudulent.

34. Jason has never maintained a Venmo account.

35. Jason has never authorized nor directed any financial institution to make a payment into anyone's Venmo account.

36. Late in the morning of March 22, 2018, Jason was brought to a courtroom at 100 Centre Street and charged with Grand Larceny in the Fourth Degree and then released the same date.

37. Thereafter, Jason was provided with a copy of the Felony Complaint against him which was sworn to by Pettit.

38. The Felony Complaint alleged that Jason committed the crime of Grand Larceny in the Fourth Degree on February 12, 2018 at 8:15 PM at 105 West 29th Street in New York County by stealing a credit or debit card.

39. Upon learning that the alleged transaction purportedly took place in Manhattan on February 12, 2018 at 8:15 PM, Jason advised his legal aid attorney that he was home in Queens on that date and time.

40. Additionally, Jason provided the legal aid attorney with home security video footage showing that Jason was in fact home on February 12, 2018 at 8:15 PM.

41. Upon information and belief, Jason's legal aid attorney furnished this video to Gendreau after Jason's next court date on April 30, 2018.

42. Notwithstanding being shown video evidence that Jason was in Queens at the time of the alleged fraudulent transaction, the criminal prosecution continued for nearly six (6) additional months during which time Jason was required to make four (4) additional Court appearances.

43. On October 17, 2018, the Honorable Cori Weston dismissed the felony complaint against Jason upon motion of the New York County District Attorney's Office which represented to Judge Weston that "upon investigation and review of the video surveillance provided by defense, the People move to dismiss as we cannot prove the case beyond a reasonable doubt."

## AS AND FOR A FIRST CAUSE OF ACTION
## FALSE ARREST IN VIOLATION OF PLAINTIFF'S
## FOURTH AND FOURTEENTH AMENDMENT RIGHTS

44. Plaintiff repeats, realleges and reiterates the allegations in paragraphs one through forty-three as if more fully set forth hereat.

45. On March 21, 2018, Jason was intentionally detained by Pettit, Smith and Police Officers John Doe 1-2.

46. In detaining Jason, the officers were acting under color of state law and within the scope of their employment by the New York City Police Department.

47. Jason was aware of his detention.

48. Jason did not consent to being detained.

49. Jason's detention was not privileged as Pettit, Smith and Police Officers John Doe 1 and 2 had no probable cause to believe that anyone had stolen a credit or debit card which is a required element of Penal Law §155.30(4).

50. Jason's detention was not privileged as Pettit, Smith and Police Officers John Doe 1 and 2 had no sworn statement from a "victim" alleging that his/her credit or debit card had been stolen.

51. Jason's detention was not privileged as Pettit, Smith and Police Officers John Doe 1 and 2 had no probable cause to believe that Jason had stolen anyone's credit or debit card.

52. Jason's detention was not privileged as Pettit, Smith and Police Officers John Doe 1 and 2 had no sworn statement from a "victim" alleging that Jason had committed any crime.

53. As a result of his illegal detention, Jason's Fourth and Fourteenth Amendment rights were violated.

54. As a proximate result of Defendants' intentional and malicious actions, Jason was greatly humiliated, injured in his reputation, caused to miss time from school, and has suffered great mental anguish causing damage in an amount to be provided at trial but no less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

## AS AND FOR A SECOND CAUSE OF ACTION
## FALSE ARREST IN VIOLATION OF PLAINTIFF'S
## FOURTH AND FOURTEENTH AMENDMENT RIGHTS

55. Plaintiff repeats, realleges and reiterates the allegations in paragraphs one through fifty-four as if more fully set forth hereat.

56. On March 21, 2018, Jason was intentionally detained by Pettit, Smith and Police Officers John Doe 1-2.

57. In detaining Jason, the officers were acting under color of state law and within the scope of their employment by the New York City Police Department.

58. Jason was aware of his detention.

59. Jason did not consent to being detained.

60. Jason's arrest was precipitated by an investigation undertaken by Gendreau and District Attorney's Office Investigators John Doe 1-2.

61. Gendreau and District Attorney's Office Investigators John Doe 1-2 had no probable cause to believe that anyone had stolen a credit or debit card which is a required element of Penal Law §155.30(4).

62. Gendreau and District Attorney's Office Investigators John Doe 1-2 urged Pettit, Smith and Police Officers John Doe 1 and 2 to arrest Jason despite having no sworn statement from a "victim" alleging that his/her credit or debit card had been stolen.

63. Gendreau and District Attorney's Office Investigators John Doe 1-2 urged Pettit, Smith and Police Officers John Doe 1 and 2 to arrest Jason despite having no probable cause to believe that Jason had stolen anyone's credit or debit card.

64. Gendreau and District Attorney's Office Investigators John Doe 1-2 urged Pettit, Smith and Police Officers John Doe 1 and 2 to arrest Jason despite having no probable cause to believe that Jason had committed any crime.

65. As a result of his illegal detention, Jason's Fourth and Fourteenth Amendment rights were violated.

66. As a proximate result of Defendants' intentional and malicious actions, Jason was greatly humiliated, injured in his reputation, caused to miss time from school, and has suffered great mental anguish causing damage in an amount to be provided at trial but no less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

### AS AND FOR A THIRD CAUSE OF ACTION
### MALICIOUS PROSECUTION IN VIOLATION OF PLAINTIFF'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS

67. Plaintiff repeats, realleges and reiterates the allegations in paragraphs one through sixty-six as if more fully set forth hereat.

68. In swearing to the Felony Complaint, Pettit participated in the commencement of a criminal prosecution against Jason.

69. As a result of the commencement of the criminal prosecution, Jason was required to miss multiple days of school before the charges were dismissed upon motion of the New York County District Attorney.

70. Pettit lacked probable cause to believe that Jason committed any criminal act at the time that he swore to the Felony Complaint.

71. The lack of probable cause generally creates an inference of malice under Second Circuit case law.

72. As a result of the Defendants' malicious prosecution, Jason's Fourth and Fourteenth Amendment rights were violated.

73. As a proximate result of Defendants' intentional and malicious actions, Jason was greatly humiliated, injured in his reputation and has suffered great mental anguish causing damage in an amount to be provided at trial but no less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

## **PRAYER FOR RELIEF**

**WHEREFORE,** plaintiffs respectfully demand the following relief:

a. For compensatory damages against all defendants in an amount to be proved at trial, but no less than THREE MILLION DOLLARS ($3,000,000.00).

b. For exemplary and punitive damages against all defendants in an amount to be proved at trial.

c. For attorneys fees pursuant to 42 U.S.C. §1988 against all defendants.

d. For such other and further relief as this Court may deem just and proper.

Dated: Lake Success, New York
       December 13, 2018

                     Respectfully submitted,

                     HARFENIST KRAUT & PERLSTEIN, LLP
                     Attorneys for Plaintiff
                     3000 Marcus Avenue, Suite 2E1
                     Lake Success, New York 11042
                     (516) 355-9612

               By: _____*Neil Torczyner*_____
                      NEIL TORCZYNER